# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S AND THOSE COMPANIES SEVERALLY SUBSCRIBING TO BOEING POLICY NUMBER MARCW150053 AND RELATED POLICIES GOVERNING THE CARGO,<br><br>          Plaintiffs,<br><br>vs.<br><br>SOUTHERN PRIDE TRUCKING, INC., et al.,<br><br>          Defendants. | 8:16-CV-116<br><br>MEMORANDUM AND ORDER |

This dispute involves an accident between two tractor trailers on Interstate 80 near Wood River, Nebraska. The accident resulted in significant damage to a Boeing airplane engine, which has led to this multi-party dispute. Specifically, Boeing's insurers, "Certain Underwriters at Lloyd's and Those Companies Severally Subscribing to Boeing Policy Number MARCW150053 and Related Policies Governing The Cargo" (collectively, "Certain Underwriters"), are suing four entities which, they claim, caused or contributed to the accident: Southern Pride Trucking, Thunder Rolls Express, Bauer Built, and Road Star Carrier. Several of the parties have filed motions for summary judgment, which will be granted in part, and denied in part, as set forth below.

## BACKGROUND

This Court's prior Memorandum and Order (filing 159) set forth the background of this case in detail. Generally speaking, the relevant facts are

as follows. Southern Pride, a trucking company, agreed to transport a Boeing airline engine from Ohio to Washington. Filing 115 at 3-4. Rather than using its own fleet of tractor trailers, Southern Pride subcontracted the job to defendant Thunder Rolls, a trucking company based in Indiana. Filing 115 at 3. Joseph Womack, Thunder Rolls' owner and sole proprietor, picked up the engine from a General Electric plant in Ohio. After loading the engine onto his trailer, Womack set out for Everett, Washington. *See* filing 124-1 at 6. Womack's route took him through Wood River, Nebraska, as he proceeded west on Interstate 80. *See* filing 191-1 at 8.

Approximately an hour and a half before Womack reached Wood River, a different westbound tractor trailer had pulled over on the westbound side of Interstate 80 with a flat tire. Filing 191-1 at 8. That tractor trailer was owned by defendant Road Star. Filing 191-1 at 8. Road Star contacted defendant Bauer Built, which provides roadside assistance to the interstate trucking industry. Soon after, a Bauer Built employee arrived to replace the tire. Filing 191-1 at 9. Both were still on the north side of the road as Womack approached.

Womack, who was driving in the right lane, was approximately 100 feet away from Road Star's disabled truck when he first noticed it. Filing 191-1 at 9. Womack attempted to move into the left lane to avoid any potential contact with the vehicle. Filing 191-1 at 9. But as he began to move over, Womack noticed a pickup truck in his side-view mirror. Filing 124-1 at 40. So, Womack "came back to the right to get [to the] center of [his] lane." Filing 124-1 at 40. Womack collided with Road Star's truck. The airplane engine dislodged from Womack's trailer, landing on the road. *See* filing 124-1 at 11. According to Certain Underwriters, the engine is no longer functional, resulting in approximately $18,000,000 in damages. Filing 191-1 at 22.

Boeing and its insurer, Certain Underwriters, filed this action against Southern Pride, Thunder Rolls, Road Star, and Bauer Built. Certain Underwriters and the first two defendants, Southern Pride and Thunder Rolls, have settled their claims. Filing 206. But Certain Underwriters has also sued the latter two defendants—Road Star and Bauer Built—for simple negligence and negligence *per se*. Road Star has also filed crossclaims against Southern Pride and Thunder Rolls for (1) negligence; (2) negligence *per se*; (3) indemnification; and (4) contribution. Filing 47 at 9-14. And Bauer Built has filed crossclaims against Southern Pride and Thunder Rolls for negligence and contribution. Filing 57 at 7-9.

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment

must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## DISCUSSION

Each of the four defendants (and Certain Underwriters) have moved for summary judgment on various grounds. Because Southern Pride and Thunder Rolls raise largely the same arguments, their motions will be considered together. The Court will then turn to Road Star and Bauer Built's motions, which also raise common issues of fact and law.

## I. SOUTHERN PRIDE AND THUNDER ROLLS

Generally speaking, Southern Pride and Thunder Rolls argue that their respective liability, if any, is governed by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. Filing 188 at 13-17. To that end, Southern Pride and Thunder Rolls contend nearly all[1] remaining state law claims of crossclaimants Bauer Built and Road Star are preempted by the Carmack Amendment, and therefore fail as a matter of law. Filing 188 at 17.

But before the Court reaches the merits of the parties' arguments, it must first take a brief detour through the history, and applicability, of the

---

[1] Road Start has filed crossclaims in negligence against Thunder Rolls and Southern Pride for damage that it sustained to its own cargo. Neither Road Star nor Southern Pride move for summary judgment on that claim.

Carmack Amendment. The Carmack Amendment provides a single uniform rule for carriers operating in interstate commerce. *Rocky Ford Moving Vans, Inc. v. United States*, 501 F.2d 1369, 1372 (8th Cir. 1974); *see* 49 U.S.C. § 14706. To that end, the statutory provisions "supercede the diverse requirements of state legislation and decisions, and render invalid all agreement(s) in derogation of them." *Rocky Ford Moving Vans,* 501 F.2d at 1372 (cleaned up). Under the Carmack Amendment, a carrier of an interstate shipment is "liable to the person entitled to recover under the receipt or bill of lading." 49 U.S.C. § 14706(a)(1). The person "entitled to recover" can bring suit for the "actual loss or injury to the property caused" against any carrier in the course of the interstate shipment. 49 U.S.C. § 14706(a)(1). A shipper can thus be confident that the carrier will be liable for any damage that occurs to its shipment. *REI Transport, Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 697 (7th Cir. 2008). And a carrier can accurately gauge, and thus insure against, any liability it may face when it agrees to carry something. *Id.*

The Carmack Amendment achieves uniformity in two primary respects—of which the latter is at issue here. First, the Amendment places "substantive limits on the rights of carriers to contract away liability." *REI,* 519 F.3d at 697 (citing *Adams Express Co. v. Croninger*, 226 U.S. 491, 505 (1913)). Second, the statute preempts state causes of action against carriers for damaged or lost goods. *See Adams Express Co.*, 226 U.S. at 505-06; *Underwriters at Lloyds of London v. North American Van Lines*, 890 F.2d 1112, 1120 (10th Cir. 1989). Thus, as some federal circuits have held, a shipper (here, Certain Underwriters) cannot bypass the statute simply by filing a state suit for the damaged goods unless the claim seeks to remedy a "separate and independently actionable harm." *North American Van Lines,*

*Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 458 (7th Cir. 1996); *see Rini v. United Van Lines, Inc.*, 104 F.3d 502,506 (1st Cir. 1997); *Smith v. United Parcel Serv.*, 296 F.3d 1244, 1249 (11th Cir. 2002).

Southern Pride and Thunder Rolls claim that Road Star's crossclaims for negligence, negligence *per se*, indemnity, and contribution, and Bauer Built's crossclaims for negligence and contribution, are preempted under the Carmack Amendment. Specifically, Southern Pride and Thunder Rolls argue that because the Carmack Amendment preempts state law causes of action, Bauer Built and Road Star's contribution- and negligence-related claims must be dismissed as a matter of law. But as Bauer Built and Road Star correctly point out, Carmack preemption is only an issue as between shippers and carriers. *See Fulton v. Chicago, Rock Island & P. R. Co.*, 481 F.2d 326, 331 (8th Cir. 1973) ("the Carmack Amendment has preempted suits in specific negligence *by holders of bills of lading against their carriers*") (emphasis added)); *see also Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1061 (9th Cir. 2011) ("the Carmack Amendment preempts all state and common law claims for relief against a *carrier* for damage to goods in interstate carriage" (emphasis added)). And neither Bauer Built's nor Road Star's crossclaims are in any way related to the shipment or carrying of cargo. Rather, as described in more detail below, the crossclaimants allege that Thunder Rolls' driver was, among other reasons, negligent in failing to keep a proper lookout. So, Southern Pride and Thunder Rolls' motion for summary judgment on these grounds will be denied.

## II. BAUER BUILT AND ROAD STAR

Certain Underwriters has also sued Road Star and Bauer Built for negligence and negligence *per se*. Filing 115 at 9-10. Road Star and Bauer Built seek summary judgment on those claims arguing, among other things,

that Womack was an efficient intervening cause, and thus, the sole proximate cause of the accident. *See* filing 191-1 at 16; filing 193 at 22. In the alternative, Bauer Built and Road Star request that the Court "enter an order declaring that Nebraska's joint and several liability law, or any other joint and several liability law, is not applicable[.]" Filing 193 at 54; filing 214 at 42. Instead, Bauer Built and Road Star argue that liability should be apportioned commensurate with the degree, if any, of Bauer Built's and/or Road Star's respective fault. Filing 193 at 54; filing 214 at 42.

The defendants' former contention touches on a broader argument underlying much of the parties' dispute: whether the Court should apply federal common law, as Certain Underwriters argues, filing 190 at 38, or state law negligence principles, as Bauer Built and Road Star contend, filing 191-1 at 102; filing 197 at 7. According to Certain Underwriters, federal common law governs because its negligence *per se* claim is premised on alleged violations of 49 C.F.R. § 392—*federal* motor carrier regulations. Filing 190 at 37-38. And it applies to the simple negligence claims, Certain Underwriters argues, because the Supreme Court has expressed a "clear requirement" of uniformity in the movement of interstate cargo. Filing 190 at 39. To that end, Certain Underwriters seems to suggest that because the underlying accident involved the interstate shipment of cargo, and thus the application of the Carmack Amendment, federal common law necessarily preempts any application of state court law or procedure. *See* filing 190 at 39-44.

But those arguments fail for at least two reasons. First, Certain Underwriters' claims against Bauer Built and Road Star are entirely unrelated to the shipment of interstate cargo and, for all practical purposes, have no meaningful connection to the Carmack Amendment. Rather, Certain

Underwriters allege that Bauer Built and Road Star were negligent by failing to take certain precautionary measures—such as adequately warning oncoming traffic of their disabled status. And Certain Underwriters has provided no authority to suggest that, under those circumstances, federal common law applies. Second, federal courts routinely apply the law of the state in determining the effect, if any, of a violation of 49 C.F.R. § 392, *et seq*. *See e.g.*, *Dmitruk v. George and Sons' Repair Shop, Inc.*, 217 F. App'x 765, at 768-69 (10th Cir. 2007) (applying Colorado law); *Estes v. USA Truck Inc.*, No. 97-30569, 1998 WL 792663, at *2 (5th Cir. Oct. 29, 1998) (applying Louisiana law); *Aragon v. Wal-Mart Stores East, LP*, 924 F. Supp. 2d 1066, 1071 (E.D. Mo. 2013); *Illinois Cent. R Co. v. Cryogenic Transp. Inc.*, 901 F. Supp 2d 790, 808 (S.D. Miss. 2012); *Spence v. ESAB Group, Inc.*, No. 1:07-CV-583, 2008 WL 450436, at *2 (M.D. Pa. Feb. 15, 2008). So, the Court will evaluate the parties' dispute under Nebraska law.

## *A. Bauer Built*

As discussed above, Bauer Built provides, among other services, roadside assistance to the interstate trucking industry. On the day of the accident, Bauer Built's employee, Brandon Salisbury, was dispatched to the eventual scene of the accident to service Road Star's flat tire. Filing 193 at 8. Salisbury had finished changing the tire, and was making final adjustments, when Thunder Rolls' driver, Womack, struck Road Star's tractor trailer. *See* filing 124-9 at 24-25.

According to Certain Underwriters, Bauer Built had a duty to warn oncoming drivers of the disabled status of roadside vehicles it services. *See* filing 115 at 5-6. Certain Underwriters contend that Bauer Built's employee breached that duty on the day of the accident by: (1) parking the service vehicle near the right front end of Road Star's truck, as opposed to behind it;

(2) parking the service vehicle parallel to the disabled truck (and the road), as opposed to at an angle; (3) failing to activate the service vehicle's overhead hazard lights; and (4) failing to place warning triangles behind the Road Star trailer. *See* filing 192 at 8 n.3; *see also* filing 190 at 16-18.

Certain Underwriters has sued Bauer Built for negligence and negligence *per se*. But since filing its amended complaint, Certain Underwriters has stipulated to the dismissal of its negligence *per se* claim against Bauer Built, and to the denial of its partial motion for summary judgment on those grounds. Filing 147. So, the only issue that remains is whether Bauer Built is entitled to summary judgment on Certain Underwriters' remaining state law negligence claim.

In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of that duty, causation, and damages. *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 784 N.W.2d 907, 913 (Neb. 2010) (citation omitted). To establish the third element, causation, the plaintiff must demonstrate that the defendant was the "proximate cause" of the plaintiff's injury. *King v. Crowell Memorial Home*, 622 N.W.2d 588, 594 (Neb. 2011). That, in turn, requires the plaintiff to meet three basic requirements. First, without the negligent action, the injury would not have occurred, commonly known as the "but for" rule. Second, the injury was a natural and probable result of the negligence. And third, there was no efficient intervening cause. *Latzel v. Bartek*, 846 N.W.2d 153, 163 (Neb. 2014). Here, Bauer Built argues that Womack's negligence was an intervening cause of the accident, and that Certain Underwriters therefore cannot, as a matter of law, establish causation. *See* filing 193 at 22.

An efficient intervening cause is new and independent conduct of a third person, which itself is a proximate cause of the injury in question "and

breaks the causal connection between the original conduct and the injury." *Latzel,* 846 N.W.2d at 164. The causal connection is severed when (1) the negligent actions of a third party intervene, (2) the third party had full control of the situation, (3) the third party's negligence could not have been anticipated by the defendant, and (4) the third party's negligence directly resulted in injury to the plaintiff. *Id.* (citing *Wilke v. Woodhouse Ford,* 774 N.W.2d 370, 383 (Neb. 2009)). The Nebraska Supreme Court has made clear that "the doctrine that an intervening act cuts off a tort-feasor's liability comes into play only when the intervening cause is not foreseeable." *Wilke,* 774 N.W.2d at 816-17. Thus, if a third party's negligence is reasonably foreseeable, the third party's negligence is not an efficient intervening cause as a matter of law. *Id.*

Specifically, Bauer Built claims that it could not have foreseen that Womack would (1) fail to keep a proper lookout; (2) follow too closely behind the tractor trailer that was travelling in front of him as to obstruct his view; and (3) "panic[]" when he saw Road Star's truck on the side of the road and "overcorrect" into Road Star's vehicle. Filing 193 at 29-39. And as such, Bauer Built argues, it cannot be held liable for its employee's negligence, if any, on the day of the accident.

Regarding its first point, Bauer Built generally claims that the Road Star truck was clearly visible, and had Womack kept a proper lookout, he could have avoided the accident altogether. To support this contention, Bauer Built points to Womack's own admission that he had a clear, unobstructed view of the road about a half mile away from the accident, but nonetheless, failed to see the disabled Road Star vehicle. Filing 124-1 at 23.

Q: So is it fair to say that when you were a half mile away from where the accident happened, you had an unobstructed view of the area where the disabled vehicle was?

. . .

A: Yes.

Q: And at that point you just did not observe the disabled vehicle on the right side of the road?

. . .

A: True.

Filing 124-1 at 23.[2] And Bauer Built bolsters its argument that Womack should have noticed the Road Star truck with testimony from Salisbury (Bauer Built's employee) and Clete Larson (an eyewitness)—both of whom testified to seeing the disabled tractor trailer on the side of the road from at least one mile away. *See* filing 193 at 18; filing 124-9 at 39; filing 124-10 at 6. Thus, according to Bauer Built, it was not bound to anticipate that Womack would fail to keep a proper lookout.

Second, Bauer Built argues that any obstruction of Womack's view was the result of his own negligence in following too closely behind a tractor trailer that was directly in front of him. Indeed, according to Womack's testimony, he began following the tractor trailer, which was a mile and a half ahead of him, approximately three miles before the accident. Filing 124-1 at 18. But because Womack was traveling at a higher rate of speed than the truck in front of him, he began gaining on the truck to the point where it

---

[2] Bauer Built extrapolates from the deposition testimony that Womack's view of the shoulder actually started as far as one mile back. Filing 123 at 24.

began to obstruct his view. Filing 124-1 at 22. And Bauer Built claims that Womack's decision to "obscure[] his own vision" by continuing to follow the tractor in front of him too closely, was unforeseeable. Filing 193 at 27.

Finally, Bauer Built points out, that by the time Womack actually saw Road Star's truck on the side of the road, he "panicked"—immediately moving over to the left lane to avoid contact with the disabled vehicle. Filing 124-1 at 34; filing 193 at 28. But because there was another car in that lane, Womack, by his own admission, "overcorrected," swerving back into the right-hand lane, and eventually side-swiping Road Star's truck. Filing 124-1 at 34. So, Womack's actions, and subsequent reaction, Bauer Built argues, were events that it "was not bound to anticipate." Filing 193 at 34.

But the Court cannot say, as a matter of law, that Womack's actions were unforeseeable. *See Lancaster Cty. Sch. Dist. 0001*, 784 N.W.2d at 917 (the Court should leave foreseeability determinations to the finder of fact "unless no reasonable person could differ on the matter"). Indeed, a driver's excessive speed, *see Maresh v. State*, 489 N.W.2d 298, 313 (Neb. 1992), *overruled on other grounds by Davis v. State*, 902 N.W.2d 165 (Neb. 2017); failure to maintain a proper lookout, *Vilas v. Steavenson*, 496 N.W.2d 543, 551 (Neb. 1993), *overruled on other grounds by DeWester v. Watkins*, 745 N.W.2d 330 (Neb. 2008); and inadvertent straying onto the side of the road, *see Maresh*, 489 N.W.2d at 312; are foreseeable events. So it would not be beyond the bounds of reason for a jury to conclude that Womack's actions were also foreseeable.

And even assuming Womack was negligent in the manner described above that does not, without more, preclude a finding that Bauer Built was also a proximate cause of the collision. As the Nebraska Supreme Court has held, an act need not be the *sole* cause of harm to qualify as a proximate

cause. *Amanda C. ex rel. Richmond v. Case*, 749 N.W.2d 429, 441 (Neb. 2008). And "[w]hen multiple causes act to produce a single injury, any one of those acts can still qualify as a proximate cause of that harm[.]" *Id.*; *see Basra v. Ecklund Logistics, Inc.*, No. 8:16-CV-83, 2017 WL 2912454, at *6 (D. Neb. May 26, 2017).

To this end, Certain Underwriters has come forward with evidence, in the form of expert testimony, that Bauer Built's alleged failure to warn oncoming traffic of Road Star's disabled truck was a proximate cause of the collision. *See* filing 130-25 at 9, filing 130-25 at 13. One expert opined that had Bauer Built parked its car behind Road Star's truck and properly activated its warning lights, it could have increased visibility beyond 1,500 feet.[3] Filing 130-26 at 11. Another observed that Bauer Built's technician "did not park his service vehicle in the correct position behind the disabled truck so that the flashers and beacon lights would be visible as a warning to oncoming traffic[.]" Filing 130-28 at 4. And Certain Underwriters' accident reconstructionist, Dr. William Fogarty, wrote:

> It is my opinion, given within a reasonable degree of scientific certainty, that the primary causes of the instant collision were failures of Road Star and Bauer Built to provide warnings within industry standards to give Mr. Womack a reasonable opportunity to react and avoid the Road Star trailer to his front.

---

[3] Again, Bauer Built suggests that such measures would not have made a difference because Womack was not keeping a proper lookout. But the evidence simply suggests that Womack, for whatever reason, did not see the disabled truck. In other words, the Court is aware of no evidence that Womack was actively distracted or not paying attention, at all, to the road.

Filing 130-25 at 9 (emphasis omitted).

A determination of causation is ordinarily a matter for the trier of fact. *Kozicki v. Dragon*, 583 N.W. 2d 336, 340 (Neb. 1998); *Baldwin v. City of Omaha*, 607 N.W.2d 841, 852 (Neb. 2000). That is particularly true in this case, where the record includes evidence from both sides as to the underlying cause or causes of the collision. *See Tess v. Lawyers Title Ins. Corp.*, 557 N.W.2d 696, 706 (Neb. 1997). Thus, because factual issues remain on the issue of causation, the Court will deny Bauer Built's motion for summary judgment as to Certain Underwriters' state-law negligence claim.

## B. Road Star

As alluded to throughout, Road's Star's employee, Muhammed Saqib, incurred a flat tire while travelling westbound on I-80. Filing 198 at 8. In response, Saqib engaged his four way flashers and pulled over to the side of the road. Filing 191-1 at 30. He then placed two reflective triangles behind the idle truck: one 10-12 feet behind the trailer, and the other 30-40 feet behind the trailer. Filing 191-1 at 30. The trailer remained on the side of the road without incident for approximately an hour and a half before the collision occurred. Filing 191-1 at 30.

Certain Underwriters contends that Road Star was negligent because its employee failed to park the trailer at an appropriate distance from the travel lane so as to avoid collision with oncoming vehicles, and failed to comply with various federal regulations for the purpose of warning oncoming traffic of its disabled status. *See* filing 115 at 9-10. Relatedly, Certain Underwriters argues Road Star was negligent *per se* because Saqib failed to place three reflective triangles around his stalled truck as is required by federal regulation. Filing 190 at 44. The parties' have filed cross motions for summary judgment on Certain Underwriters' negligence *per se* claim. *See*

filing 189; filing 192. And Road Star has moved for judgment as a matter of law on Certain Underwriters' remaining negligence claim. Filing 191.

*(i) Negligence Per Se*

Certain Underwriters' motion for partial summary judgment is easily disposed of, so the Court will begin there. Certain Underwriters argues that because Road Star violated certain federal safety regulations, it has necessarily established its claim for negligence *per se*. But even assuming Certain Underwriters' allegations are true, summary judgment would not be appropriate. After all, the Nebraska Supreme Court has repeatedly held that "the violation of a regulation or statute is not negligence *per se*, but may be evidence of negligence to be considered with all the other evidence in the case." *Scheele v. Rains*, 874 N.W.2d 867, 872 (Neb. 2016); *see Fuhrman v. State*, 655 N.W.2d 866, 874 (Neb. 2003), *disapproved on other grounds*, *Jill B. v. State*, 899 N.W.2d 241, 265 (Neb. 2017); *Goodenow v. Dept. of Corr. Serv.*, 610 N.W.2d 19, 22 (Neb. 2000). So, Certain Underwriters' motion for partial summary judgment on these grounds will be denied, and Road Star's motion for summary judgment will be granted on the issue of negligence *per se*. Accordingly, Certain Underwriters' negligence *per se* claim (cause of action V) will be dismissed.[4]

*(ii) Negligence*

Certain Underwriters also alleges that Road Star's employee was negligent in failing to park the disabled tractor trailer "at a safe distance from the travel lane," and for "failing to comply" with various federal safety

---

[4] So the record is clear, Certain Underwriters has also stipulated to the dismissal of its negligence *per se* claim against Bauer Built, filing 147, and thus, Certain Underwriters' Fifth Cause of Action—negligence *per se*—will be dismissed in its entirety.

standards warning oncoming traffic of its disabled status. Filing 115 at 9-10. Road Star has moved for summary judgment on that claim, raising nearly identical arguments to those discussed above. In other words, Road Star, like Bauer Built, claims that Womack was an efficient intervening cause of the accident based on his "inattentiveness, his panicked response when he finally became aware of Road Star's disabled vehicle, and his failure to comply with the rules of the road." Filing 198 at 50. But for the reasons already explained, the Court finds that Womack's negligence was not necessarily unforeseeable. Thus, it cannot be said that Womack, as a matter of law, was the sole proximate cause of the accident.

So, one issue remains: whether a reasonable fact finder could conclude that Road Star breached its legal duty and was a proximate cause of the collision. *See Lancaster Cty. Sch. Dist. 0001*, 784 N.W.2d at 913. Road Star claims it was not, and supports this argument with evidence that it says demonstrates that Road Star took the necessary steps, and followed the relevant regulations, to ensure oncoming traffic was properly warned of its disabled status. Filing 191-1 at 124. Specifically, Road Star claims that it was not obligated to comply with 49 C.F.R § 392.22(b)(2)(iv)—requiring the driver of a disabled vehicle to place a warning as far as 500 feet behind the tractor trailer—because there was no "curve, crest of a hill, or other obstruction" triggering the application of this provision. Filing 191-1 at 125-26. Instead, Road Star argues that 49 C.F.R § 392.22(b)(1), requiring the driver of a vehicle to place three triangles around the disabled tractor trailer, applies to the facts of this case. And it is Road Star's position that Saqib placed the correct number of triangles, at the appropriate distances, as required by federal regulation. Filing 191-1 at 127.

But after reviewing the evidence, the Court finds that summary judgment is not warranted at this stage of the proceeding. First, even if, as Road Star contends, § 392.22(b)(2)(iv) does not apply to this dispute, Road Star has not addressed the various other regulations that Certain Underwriters claims were disregarded on the day of the accident. *See* filing 190 at 22-44; *see also* 49 CFR § 392.8, 49 CFR § 393.95(f)(2); 49 CFR 393.95. Second, the regulation Road Star argues does apply, § 392.22(b)(1), also requires the driver to place *three* warning devices on the road immediately after the vehicle is stalled, with the last warning device to be placed at least 100 feet behind the vehicle. *Id*. And, based on the evidence before the Court, it appears that Road Star's driver only placed *two* warning devices on the road immediately after the vehicle was stalled, with the last warning triangle placed no more than sixty feet behind the truck. Filing 124-7 at 27; filing 113-6 at 22.

And as discussed above, Certain Underwriters has come forth with evidence, in the form of expert testimony, suggesting that had Road Star provided warnings within industry standards, Womack would have had a reasonable opportunity to react, and avoid, the Road Star trailer. *See* filing 130-25 at 9, filing 130-25 at 13; filing 130-26; filing 202-1. This is an issue for the jury to decide. Thus, Road Star's motion for summary judgment as to Certain Underwriters' negligence claim will be denied.

### C. Joint and Several Liability

Bauer Built and Road Star raise separate, yet related arguments (and requests) regarding joint and several liability. Bauer Built claims that, in the event its motion on the merits is denied, the Court should enter an order "declaring that Nebraska's joint and several liability law, or any other joint and several liability law, is not applicable to the claims alleged against Bauer

Built." Filing 193 at 54. Similarly, Road Star requests that the Court "find that joint and several liability does not apply" to shift responsibility to Road Star "as to any damages assessed against Southern Pride and Thunder Rolls." Filing 191-1 at 167. These motions are premised on the contention that Nebraska's comparative negligence statutory scheme prohibits a negligence defendant (*i.e.*, Bauer Built and Road Star) from being a joint tort-feasor with a strict liability defendant (*i.e.*, Thunder Rolls and Southern Pride).

Indeed, the Nebraska legislature has created a statutory scheme which has altered the common law rule for joint and several liability in some instances. *See Tadros v. City of Omaha*, 735 N.W.2d 377, 380 (Neb. 2007). Specifically, Neb. Rev. Stat. § 25-21,185.10 states:

> In [an] action involving more than one defendant, the liability of each defendant for economic damages shall be joint and several and the liability of each defendant for noneconomic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of noneconomic damages allocated to that defendant in direct proportion to that defendant's percentage of negligence, and a separate judgment shall be rendered against that defendant for that amount.

*Id.*. In other words, § 25-21,185.10 allows joint and several liability for *economic damages*, but limits the plaintiff's recovery of *non-economic* damages from any one tort-feasor to that tort-feasor's proportionate liability.

But as Bauer Built and Road Star correctly point out, that statutory rule only applies when contributory negligence "may be, pursuant to law, a

defense" to the plaintiff's underlying claim. Neb. Rev. Stat. § 25-21,185.07. So, an initial question is whether contributory negligence can be asserted as a defense such that Nebraska's statutory framework governs.

The Nebraska Supreme Court has answered that question in the negative. Specifically, in *Shipler v. Gen. Motors Corp.*, the court addressed whether "contributory negligence [may] be asserted as a defense in an action based upon strict liability." 710 N.W.2d 807, 826 (Neb. 2006). The court concluded that it cannot, noting that the text of § 25-21,185.07, as well as the evidence of legislative intent before it, supported the conclusion that Nebraska's comparative negligence statutes were not intended to apply in actions based on strict liability. *Shipler*, 710 N.W.2d at 831. And because this is an action based in part on strict liability, *see UPS Supply Chain Solutions, Inc. v. Megatrux Transp.*, Inc., 750 F.3d 1282, 1285 (11th Cir. 2014) (claims based on the Carmack Amendment are strict liability claims); *Mitsui Sumitomo Ins. Co. v. Evergreen Marine Corp.*, 621 F.3d 215, 216 (2nd Cir. 2010); *PNH Corp. v. Hullquist Corp.*, 843 F.2d 586, 590 (1st Cir. 1988), the Court finds that contributory negligence is not a defense, and therefore, § 25-21,185.10 does not apply.

But Bauer Built and Road Star's arguments end there. In other words, both parties suggest that because § 25-21,185.10 does not apply, joint and several liability is necessarily foreclosed. To that end, Bauer Built and Road Star mention nothing of general common law principles, which generally apply in the absence of clear statutory language displacing a common law right. *See Dykes v. Scotts Bluff Cty. Agr. Soc., Inc.*, 617 N.W.2d 817, 823 (Neb. 2000) ("the common law will be abrogated no further than expressly declared or than is required from the clear import of the language employed by the statute"); *Macku v. Drackett Prods. Co.*, 343 N.W.2d 58, 61 (Neb. 1984)

(construction of a statute which changes, or abolishes common-law rights should not be adopted, "unless the plain words of the statute compel such result"); *see also Munstermann ex rel. Rowe v. Alegent Health-Immanuel Med. Ctr.*, 716 N.W.2d 73, 83 (Neb. 2006) (determining that in the absence of a statute controlling a mental health professional's duty to warn, common law still controls). And that oversight is not insignificant as Nebraska common law also recognizes joint and several liability in lawsuits involving more than one defendant. Indeed "an act wrongfully done by the joint agency or cooperation of several persons, or done contemporaneously by them without concert, renders [the defendants] liable jointly and severally." *Lackman v. Rousselle*, 596 N.W.2d 15, 21 (Neb. 1999). And when two (or more) causes produce a single indivisible injury, joint and several liability attaches. *Kudlacek v. Fiat S.p.A.*, 509 N.W.2d 603, 612 (Neb. 1994).

Here, it appears likely that Road Star, Bauer Built, Thunder Rolls, and Southern Pride combined to produce a single indivisible injury. But in the absence of any argument, or evidence, presented to the Court pertaining to the divisibility, if any, of the injury, the Court cannot say, as a matter of law, that Bauer Built and Road Star cannot be held jointly and severally liable with Thunder Rolls and Southern Pride. Indeed, as noted above, common law principles account for such joint liability, and Road Star and Bauer Built have provided the Court no explanation as to why, or how, those common law principles would not apply.

## III. MOTION TO STRIKE

As a final matter: the Court will deny the parties' various motions to strike each other's arguments and evidence. Certain Underwriters has moved to strike Road Star's entire statement of facts because, among other reasons, it cites to expert reports that Certain Underwriters claims are "biased" and

based on "outdated" and "misleading" findings. Filing 131 at 36-41. In response, Road Star requests that the Court strike "as entirely speculative" and "internally contradictory" the opinions of Dr. William Fogarty, one of Certain Underwriters' expert witnesses. *See* filing 191-1 at 163. And Road Star seeks to strike the expert report from expert ophthalmologist, Marc Green, as "redundant, unsupported by facts, and entirely irrelevant." Filing 213 at 16. But many of the arguments in support of those requests are premature, without merit, or both. So, those motions will be denied in their entirety.

CONCLUSION

In sum, Certain Underwriters' partial motion for summary judgment is denied. Bauer Built's and Road Star's motions for summary judgment are denied in part, and granted in part, as set forth above. Specifically, Bauer Built and Road Star may pursue their state law claims against Thunder Rolls and Southern Pride. And Certain Underwriters may pursue its negligence claims against Bauer Built and Road Star. But Road Star's motion for summary judgment as to Certain Underwriters' negligence *per se* claim will be granted, and that claim will be dismissed.

IT IS ORDERED:

1.  Thunder Rolls and Southern Pride's motion for summary judgment (filing 188) is denied.

2.  Certain Underwriters' partial motion for summary judgment (filing 189) is denied.

3.  Road Star's motion for summary judgment (filing 191) is denied in part, and granted in part, as set forth above.

4.  Bauer Built's motion for summary judgment (filing 192) is denied in part, and granted in part as set forth above.

5.  Bauer Built's motion for oral argument (filing 195) is denied.


Dated this 30th day of January, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge