IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S AND THOSE COMPANIES SEVERALLY SUBSCRIBING TO BOEING POLICY NUMBER MARCW150053 AND RELATED POLICIES GOVERNING THE CARGO, | 8:16-CV-116 |
| Plaintiffs, | MEMORANDUM AND ORDER |
| vs. | |
| SOUTHERN PRIDE TRUCKING, INC., et al., | |
| Defendants. | |

This matter is before the Court on Bauer Built's and Road Star's joint Motion to Reconsider (filing 232) asking the Court to revise several aspects of its Memorandum and Order of January 30, 2018 (filing 217). Southern Pride and Thunder Rolls have also filed a separate but related motion for summary judgment (filing 241) asking the Court to dismiss Bauer Built's and Road Star's contribution claims. And there are several outstanding motions mostly relating to discovery and case progression. Filing 256; filing 258; filing 261; filing 264; filing 269; filing 286; filing 311; filing 315; filing 319; filing 325.

As set forth below, the Court will grant Bauer Built's and Road Star's motion to reconsider in part, and deny it in part. The Court will grant Southern Pride's and Thunder Rolls' motion for summary judgment. And the Court will clear out the remaining discovery and progression motions so that the parties can assess the effect of the Court's ruling on the motion to reconsider and motion for summary judgment.

# I. MOTION TO RECONSIDER

Defendants Bauer Built and Road Star move for reconsideration of this Court's Memorandum and Order of January 30, 2018 (filing 217).[1] Specifically, they ask the Court to alter its conclusions with respect to two issues: (1) apportionment of liability, and (2) proximate cause. Their arguments with respect to proximate cause are without merit, and will not be revisited here— the Court abides by its previous decision. Their arguments with respect to liability, however, raise broader issues of law and policy not previously addressed by the parties.[2] And those issues warrant reconsideration.[3]

---

[1] In connection with their motion to reconsider, Bauer Built and Road Star also requested an interlocutory appeal to the Eighth Circuit Court of Appeals, in the event that the Court declined to reconsider its decision. Filing 232 at 2-3. But with respect to proximate cause— the issue on which the Court will deny the motion to reconsider—there is no controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal would not advance the ultimate termination of this litigation. *See* 28 U.S.C. § 1292(b). Nor have Road Star and Bauer Built met the burden of establishing that this is an exceptional case warranting immediate review. *See Union Cty., Iowa v. Piper Jaffray & Co.*, 525 F.3d 643, 646 (8th Cir. 2008). Accordingly, their request will be denied.

[2] The Court's previous memorandum and order left the door open for alternative argument and evidence as to why general common law principles governing joint and several liability did not apply, filing 217 at 20, which the parties have now done.

[3] The Court acknowledges Certain Underwriter's contention that the Court's memorandum and order should not be reconsidered on this basis because "the parties extensively briefed [the effect of the settlement] with case law explaining the legal effect that the settlement had upon the joint and several liability of the other parties, under both federal and Nebraska law." Filing 243 at 3. The Court disagrees. In the previous round of briefing, Certain Underwriters' arguments addressed the effect of the settlement under federal law, rather than Nebraska law. Filing 201 at 112-134. And Bauer Built's and Road Star's arguments only addressed *how* Nebraska's statutory scheme would apply, not *why* the statutory scheme

All the parties have, at various points in this litigation, made inconsistent arguments. *Compare, e.g.*, filing 131 at 16, *with* filing 234 at 10. As a general matter, the positions taken by the parties up to this point, embedded in thousands of pages of briefing, often seem to be based on advocacy of the moment, as opposed to a genuine attempt to grapple with the complex issues presented by this case—and therefore to help the Court grapple with those issues as well. In other words, instead of describing the forest, the parties have been pelting the Court with trees. And the barrage of filings has created its own problems, because the pleadings and motions never seem to sit still long enough to present a stationary target, for the Court or the parties—to the point that one of the pending motions (which will be dealt with below) actually asks the Court to rule on whether certain claims have been pled. Filing 319.

The Court's previous memorandum and order (filing 217) solved some of those problems, but exacerbated others. It did, however—if nothing else—have the salutary effect of narrowing the parties' vision, such that the last round of briefing on the pending motions was a bit more focused.[4] So, the Court is now

---

should apply following the settlement. Filing 191-1 at 149. But even if that were not true, under Fed. R. Civ. P. 54(b),

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised *at any time* before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

(Emphasis added). So, Certain Underwriters' opposition is without merit.

[4] The Court has, for this reason, focused its discussion on the essential issues, resisting the temptation to chase each of the innumerable rabbits that the parties have loosed during the course of their extensive briefing of these motions and the underlying motions. But the Court has reviewed all the parties' briefs and considered each of their arguments carefully.

in a position, for perhaps the first time in this litigation, to concretely assess the scope of the remaining parties' liability—which it will now address.[5]

Broadly, the Court reaches two conclusions with respect to the apportionment of liability and the applicability of Nebraska's contributory negligence statutes. First, the Court finds that because Certain Underwriters' Carmack Amendment claims have been dismissed, and the remaining claims sound in negligence, Nebraska's contributory negligence statutes are applicable. And second, the Court concludes that it erred in the first instance in concluding that those statutes were inapplicable, regardless of whether Carmack Amendment claims were pending. Here's why.

### 1. EFFECT OF DISMISSING CARMACK AMENDMENT CLAIMS

Certain Underwriters originally sued four defendants for their alleged role in causing or contributing to a roadside accident. Filing 115. Two of the defendants—Southern Pride and Thunder Rolls—were sued under the Carmack Amendment. *See* filing 115 at 7. The other two defendants—Bauer Built and Road Star—were sued in negligence. Filing 115 at 9-11. Certain Underwriters has since settled (and dismissed) its claims against Southern Pride and Thunder Rolls, leaving only its remaining claims in negligence against Bauer Built and Road Star. Filing 203; filing 206. Thus, the question before the Court is: What effect, if any, did the settlement and dismissal have on the apportionment of liability?

---

[5] The parties were asked whether some of these complex questions of state law should be certified to the Nebraska Supreme Court. Filing 309. While Road Star and Bauer Built were willing, the other parties disagreed. *Compare* filing 316, *with* filing 317 *and* filing 318. So, the Court forges ahead.

As a threshold matter, there are two bodies of substantive law that govern the apportionment of liability in Nebraska civil tort actions: common law, and Nebraska's comparative negligence statutes. The comparative negligence statutes apply *only* where contributory negligence may be a defense to the underlying claim. Neb. Rev. Stat. § 25-21,185.07. State common law applies in every other instance. *Dykes v. Scotts Bluff Cty. Agr. Soc., Inc.*, 617 N.W.2d 817, 823 (Neb. 2000). But before addressing which body of law governs this case, it is worth discussing how they are similar, and different, as that relates to the underlying dispute.

Nebraska's comparative negligence statutes abrogate the common law in some respects, but do not supplant it entirely. Indeed, the statutes *retain* common law joint and several liability for economic damages. Neb. Rev. Stat. § 25-21,185.10; *Tadros v. City of Omaha*, 735 N.W.2d 377, 382 (Neb. 2007). So, as a general matter, joint and several liability applies under the statutes and common law where—as here—two or more causes produce a single indivisible injury. *Kudlacek v. Fiat S.p.A.*, 509 N.W.2d 603, 612 (Neb. 1994).

The analysis changes, however, when a claimant settles with one or more of the jointly and severally liable defendants. At common law, the "traditional rule" for apportioning liability amongst the remaining, non-settling defendants is applied. Under the common-law traditional rule, "[when] the plaintiff settles with one of the jointly and severally liable tort-feasors, then the plaintiff's recovery against the remaining tort-feasors is reduced by the actual settlement amount." *Tadros*, 735 N.W.2d at 380. So, non-settling tort-feasors remain jointly and severally liable for the total damages assessed, less the actual dollar amount of the settling parties' agreement.

Nebraska's statutory scheme abrogates the traditional rule. Under the statute, when the plaintiff settles with one of the jointly and severally liable

defendants, the plaintiff's recovery against the remaining tort-feasors is reduced by the settling tort-feasor's *proportionate* share of liability. *Id.* at 383. Thus, by settling with a joint tort-feasor, the claimant "forfeits . . . joint and several liability," and the trier of fact must instead apportion a percentage of liability to each defendant. *Id.* at 382. The court then reduces the total percentage apportioned to the settling defendants from the overall damage award. *Id.* And because any right to contribution arises only when a joint tort-feasor discharges more than his or her proportionate share of the judgment, that apportionment has the practical effect of extinguishing contribution claims by the remaining defendants against a settling defendant. *Id.*

Not surprisingly, the parties disagree as to which law governs this dispute. Bauer Built and Road Star argue that the statutes apply, and that Certain Underwriters—as a result of its settlements—"[cannot] recover[] from Bauer Built and Road Star more than their proportionate share of individual liability . . . as determined by the trier of fact." Filing 233 at 4. Certain Underwriters, however, argues that common law applies, and that Bauer Built and Road Star are jointly and severally liable for any and all damages awarded by the jury (less Certain Underwriters' settlement with Southern Pride and Thunder Rolls).

The Nebraska Supreme Court has suggested that, when a negligence defendant is sued alongside a strict liability defendant, courts do not apply the statutory scheme. *See Shipler v. General Motors Corp.*, 710 N.W.2d 807, 825 (Neb. 2006). After all, in order to trigger the statutory scheme, contributory negligence must be, pursuant to law, a potential defense to the underlying claim. § 25-21,185.07. And contributory negligence is not a defense to an action based upon strict liability. *Shipler*, 710 N.W.2d at 831-32. So, in *Shipler*, the

Nebraska Supreme Court affirmed applying common law principles where the plaintiff sought recovery in both negligence and strict liability.[6] *Id.* at 824-32.

But here, unlike *Shipler*, Certain Underwriters has voluntarily dismissed its claims against the only two defendants who were arguably sued in strict liability. *See* filing 203; filing 206. In other words, there are no strict liability claims that, pursuant to *Shipler*, might preclude application of Nebraska's statutory scheme. *Id. Shipler* does not expressly address whether an action is one "to which contributory negligence may be, pursuant to law, a defense" within the meaning of § 25-21,185.07 when strict liability claims are settled—and therefore dismissed—before trial. And as Road Star and Bauer Built correctly point out, the applicability of Nebraska's statutory scheme may vary during litigation depending on the then-pending claims. *See generally*, filing 233 at 8-9; *cf. Tadros*, 735 N.W.2d at 380.

So, at least at this stage of the litigation, under an ordinary reading of § 25-21,185.07, the statutory scheme governs. And that is true because the remaining claims sound in negligence—to which contributory negligence may be a defense pursuant to law.[7] *See, e.g., Jensen v. Archbishop Bergan Mercy Hosp.*, 459 N.W.2d 178, 184 (Neb. 1990). The next question, then, is whether

---

[6] The *Shipler* court also noted that the strict liability defendant "could be held jointly and severally liable for the entire damage" with the negligence defendant. *Id.* at 843. Thus, Bauer Built's and Road Star's related argument that a negligence defendant can never be jointly and severally liable with a strict liability defendant is without merit.

[7] That is true because, even if the plaintiff (or the plaintiff's subrogor) wasn't negligent, the remaining *claim* is one to which contributory negligence *may* be a legal defense. *See* § 25-21,185.07. And in any event, the negligence of a third party may also be the basis for a defense of "contributory negligence." *Ammon v. Nagengast*, 895 N.W.2d 729, 737-38 (Neb. Ct. App. 2017), *review denied* (June 5, 2017).

liability should be apportioned pursuant to § 25-21,185.11.[8] That's not a foregone conclusion: the Nebraska Supreme Court said in *Tadros* that § 25-21,185.11 provides for a *pro rata* reduction of the plaintiff's recovery because "the language of § 25-21,185.11(1) is similar to the language of Neb. Rev. Stat. § 25-21,185.10, relating to the allocation of noneconomic damages amongst multiple defendants, 'in direct proportion to that defendant's percentage of negligence.'" 735 N.W.2d at 381. And the Court said in *Shipler* that § 25-21,185.10 "allows the jury to compare the negligent conduct of codefendants" but "does not provide that one defendant's negligence may be compared to another in a cause of action for strict liability in tort." 710 N.W.2d at 830-31.

But the Court nonetheless concludes that § 25-21,185.11(1) should be applied. First, the Court sees little basis in the statutory scheme to conclude that § 25-21,185.11 does not apply in any instance in which § 25-21,185.07 is satisfied, even if it was satisfied as a consequence of dismissing other claims. Second, as a general matter, there is no conceptual reason why comparative fault principles cannot be used to apportion liability between tortfeasors even when liability for one rests on strict liability and liability for the other on negligence. *See Frazer v. A.F. Munsterman, Inc.*, 527 N.E.2d 1248, 1257 (Ill. 1988) (collecting cases). And finally, as will be explained in more detail below, the Carmack Amendment *does* contemplate comparing the parties' negligence, even if it shifts and raises the burden of proof with respect to such issues.

---

[8] Section 25-21,185.10 could also be directly implicated in circumstances like this, but it appears that in this case—as is undoubtedly common under the Carmack Amendment—the plaintiff's alleged damages are entirely economic. Filing 115 at 6; *see Lesiak v. Cent. Valley Ag Co-op., Inc.*, 808 N.W.2d 67, 81 (Neb. 2012); *Gallion v. O'Connor*, 494 N.W.2d 532, 534 (Neb. 1993); *see also Gourley ex rel. Gourley v. Nebraska Methodist Health Sys., Inc.*, 663 N.W.2d 43, 80 (Neb. 2003) (Gerrard, J., concurring).

Accordingly, Certain Underwriters' claims against Bauer Built and Road Star are to "be reduced by the amount of [Southern Pride's and Thunder Rolls]'s share of the obligation as determined by the trier of fact." § 25-21,185.11.

And that result makes sense. After all, as the Nebraska Supreme Court articulated in *Tadros*, the law ought to encourage rather than discourage settlement. 735 N.W.2d at 940. And under the common law rule, there is little, if any, incentive to settle. *Id.* Indeed, common law fails to provide finality of liability for the settling tort-feasor because its remaining defendants maintain the right to contribution. *Id.* But, under the statutory scheme, finality and fairness are achieved: the non-settling parties will not be prejudiced by a settlement amount over which they had no control, the settling parties can be sure that their share of liability is limited to the bargained-for settlement amount, and the plaintiff may benefit in the event that its settlement with settling parties exceeds their proportionate shares of liability. *Id.*

In arguing to the contrary, Certain Underwriters relies on *Downey v. W. Cmty. Coll. Area*, in which the Nebraska Supreme Court held that § 25-21,185.11 did not apply where the injured plaintiff received workers' compensation benefits from his employer, then sued a third-party tort-feasor for negligence. 808 N.W.2d 839, 845, 851-52 (Neb. 2012). According to Certain Underwriters, *Downey* supports the proposition that "that parties that do not face liability for negligence are not within the statute and their fault, if any, will be recoverable jointly and severally from the other tortfeasors[.]" Filing 234 at 10 (emphasis omitted). But *Downey* is clearly distinguishable—or, more to the point, a workers' compensation claim is clearly distinguishable from a Carmack claim.

In *Downey*, the Nebraska Supreme Court held that the employer was not a "released person" to whom fault could be allocated under § 25-21,185.11,

because the employer had never been a "person liable" in tort for the injury. 808 N.W.2d at 851. But that's because under the Nebraska Workers' Compensation Act, "employers are immune from lawsuits by their employees" and "an employer covered by workers' compensation has no liability in tort[.]" *Id.* at 852. As will be discussed in more detail below, however, a Carmack claim "does indeed sound significantly in tort." *Fulton v. Chicago, Rock Island & P. R. Co.*, 481 F.2d 326, 333 (8th Cir. 1973).[9] Certain Underwriters' argument to the contrary, *see* filing 234 at 11, is squarely foreclosed by Eighth Circuit precedent. And *Downey* also rests on the premise that an employer whose concurring negligence contributed to an employee's injury does not have a common liability with the third party tort-feasor—a premise wholly at odds with the joint and several liability that Certain Underwriters has repeatedly insisted upon in this proceeding. *Compare Downey*, 808 N.W.2d at 851, 853, *with* filing 201, *passim*, *and* filing 234 at 10.

In sum, the Court concludes that, following Certain Underwriters' settlement with Southern Pride and Thunder Rolls, the plain language of the statute and underlying policy considerations support application of Nebraska's statutory scheme. Nothing in § 25-21,185.11 precludes apportioning fault to a (formerly) strict liability defendant when, at the time that liability is determined, the statutory scheme is applicable by its terms. The Court concludes that, were the Nebraska Supreme Court confronted with the question, that court would conclude that the statutory scheme applies to "civil actions to which contributory negligence may be, pursuant to law, a defense"

---

[9] The Court is aware of authority suggesting otherwise. *See N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 456 (7th Cir. 1996). But it's not Eighth Circuit authority, and the Eighth Circuit has clearly explained how and why Carmack claims sound in tort. *See Fulton*, 481 F.2d at 333.

when contributory negligence could be a defense at the time the case is submitted to the finder of fact. *Cf. Tadros*, 735 N.W.2d at 380. Accordingly, § 25-21,185.11 will govern this dispute at trial.

### 2. APPLICABILITY OF CONTRIBUTORY NEGLIGENCE STATUTES

But even absent the dismissal of the Carmack Amendment claims, the Court has reconsidered its holding regarding the applicability of Nebraska's contributory negligence statutes in this case. In the Court's Memorandum and Order of January 30, 2018 (filing 217), the Court found that Nebraska's comparative negligence statutes would not apply here, because they do not apply in an action based in part on strict liability. Filing 217 at 19 (citing *Shipler*, 710 N.W.2d at 826). Upon further consideration of this complex issue, the Court now concludes otherwise.

Understanding why starts with *Shipler*. In *Shipler*, the plaintiff had been injured in an automobile accident and sued two defendants: the driver of the vehicle in which the plaintiff had been a passenger, and the manufacturer of the vehicle. *Id.* at 818. She alleged, as relevant, that the driver had been negligent and that the vehicle was defective. *Id.* Under Nebraska law,

> [i]n a cause of action based on negligence, the question involves the manufacturer's conduct, that is, whether the manufacturer's conduct was reasonable in view of the foreseeable risk of injury, whereas in a cause of action based on strict liability in tort, the question involves the quality of the manufactured product, that is, whether the product was unreasonably dangerous.

*Id.* at 830 (citing *Rahmig v. Mosley Machinery Co.*, 412 N.W.2d 56 (Neb. 1987)). And, the Court explained,

> [s]trict liability is an abandonment of the fault concept in product liability cases. No longer are damages to be borne by one who is culpable; rather they are borne by one who markets the defective product. The question of whether the manufacturer or seller is negligent is meaningless under such a concept; liability is imposed irrespective of his negligence or freedom from it. Even though the manufacturer or seller is able to prove beyond all doubt that the defect was not the result of his negligence, it would avail him nothing.

*Id.* at 829 (citing *Smith v. Smith*, 278 N.W.2d 155 (S.D. 1979)). So, the *Shipler* court concluded that Nebraska's comparative negligence statutes did not apply to a strict liability claim—*e.g.*, a product liability claim—because contributory negligence was excluded as a defense under the statutes. *See id.* at 830.

But there are meaningful differences between a Nebraska product liability claim and a claim under the Carmack Amendment. The Carmack Amendment has been characterized as imposing "something close to strict liability upon originating and delivering carriers." *Mitsui Sumitomo Ins. Co. v. Evergreen Marine Corp.*, 621 F.3d 215, 217 (2d Cir. 2010); *see Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1300 (11th Cir. 2018); *PNH Corp. v. Hullquist Corp.*, 843 F.2d 586, 589 (1st Cir. 1988). And that's true to the extent that a Carmack plaintiff need not prove negligence as part of its *prima facie* case. But that doesn't mean negligence isn't at issue.

> Indeed, the nature of the carrier's duty under the Carmack Amendment sounds in negligence. The carrier's duty in the carriage of cargo is due care, it cannot exculpate itself from loss or responsibility due to negligence, [and] the carrier bears a heavy

burden of proof akin to res ipsa loquitur because it has peculiarly within its knowledge the facts which may relieve it of liability, but it is liable under the statute only for damage "caused by" it and therefore can escape liability by proving the damage was due to an excepted cause and that it was free from negligence. Thus, despite the divergent language in the various cases, it is clear that the duty therein sought to be imposed on the common carrier with respect to transportation and delivery of goods is based on the law of negligence.

*Fulton*, 481 F.2d at 333 (cleaned up).

Under the Carmack Amendment, the shipper's *prima facie* case is established when it shows that the cargo was delivered to the carrier in good condition, that the cargo arrived at its destination in damaged condition, and the amount of the damages. *Id.* at 336. Then, the burden of proof shifts to the carrier to show both that it was free from negligence and that the damage to the cargo was caused by one of the "excepted causes relieving the carrier of liability": an act of God, a public enemy, an act of the shipper itself, public authority, or the "inherent vice or nature of the goods." *Id.* (citing *Missouri Pac. R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964)). So, while "strict liability" is often a useful shorthand, the Carmack Amendment might more accurately be characterized as shifting the burden of proof. *See id.* at 335-36. The Carmack Amendment establishes a presumption of negligence when cargo is damaged, but that presumption is rebuttable if the carrier can show it wasn't negligent and that the damage resulted from (among other possibilities) the shipper's own negligence. If the cause of the damage can't be proved, then the carrier is liable. But, unlike a product liability claim, liability is *not* imposed

"irrespective of [the carrier's] negligence or freedom from it." *Compare Shipler*, 710 N.W.2d at 829, *with Fulton*, 481 F.2d at 333.

And that means, contrary to the Court's initial conclusion, that contributory negligence *is* a defense to a Carmack Amendment claim. *See Fulton*, 481 F.2d at 335-36 (comparing common-law contributory negligence to the Carmack Amendment). True, "the burden of proof is drastically altered." *Id.* at 336. But it is, nonetheless, an affirmative defense premised upon "conduct on the part of the plaintiff amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury" and which "contributes to the injury complained of as a proximate cause." *See Grote v. Meyers Land & Cattle Co.*, 485 N.W.2d 748, 757 (Neb. 1992). It's also true that "contributory negligence" is usually concurrent and cooperative with the defendant's own negligence. *See id.* But that's because in a common-law negligence case, there's no need for an affirmative defense until the plaintiff proves the defendant's negligence as part of its *prima facie* case. The Carmack Amendment alleviates the plaintiff's burden of proof in that regard, but doesn't change the essential nature of the carrier's defense.

While the Court recognizes the Nebraska Supreme Court's holding with respect to the Nebraska comparative negligence statutes and strict liability claims, the Court concludes that a Carmack Amendment claim is not a "strict liability" claim in the sense that the Nebraska Supreme Court used that term in *Shipler*. The "significant distinction between negligence and strict liability in the context of product liability actions" upon which *Shipler* is premised is not to be found in the context of Carmack Amendment actions. *Compare Shipler*, 710 N.W.2d at 830, *with Fulton*, 481 F.2d at 333. And this is, in the end, a question of state statutory interpretation. *See Shipler*, 710 N.W.2d at 829. In the absence of anything to the contrary, statutory language is to be

given its plain and ordinary meaning, and the Court must place on a statute a reasonable construction which best achieves the statute's purpose, rather than a construction which would defeat the statute's purpose. *Id.* The Court concludes that because the Carmack Amendment permits the trier of fact to consider and compare a carrier's alleged negligence to a shipper's alleged negligence, it is a civil action "to which contributory negligence may be, pursuant to law, a defense" within the meaning of § 25-21,185.07.

### 3. CARMACK AMENDMENT PREEMPTION

In related briefing, Certain Underwriters has reasserted an argument of its own that the Court previously rejected: the contention that federal law, not state law, controls the apportionment of liability among the defendants. Filing 317 at 3-7; *see* filing 217 at 7-8. The Court has also reevaluated that argument, and again finds it to be without merit.

The scope of Carmack Amendment preemption is not as expansive as Certain Underwriters seems to suggest. The Carmack Amendment expressly recognizes the right of a shipper and carrier to establish an agreed value of the goods to be shipped, which limits the carrier's liability and permits a shipper to benefit from a lower rate. *Rocky Ford Moving Vans, Inc. v. United States,* 501 F.2d 1369, 1372 (8th Cir. 1974). In adopting the Carmack Amendment, Congress intended to impose a single uniform federal rule upon the obligations of carriers operating in interstate commerce. *Id.* Such statutory provisions supersede the diverse requirements of state legislation and decisions, and invalidate all agreement in derogation of them. *Id.*

Accordingly, the Carmack Amendment was intended by Congress to create a national uniform policy regarding the liability of carriers under a bill of lading for goods lost or damaged in shipment. *Shao v. Link Cargo (Taiwan) Ltd.,* 986 F.2d 700, 706 (4th Cir. 1993). To accomplish that, the Amendment

"created a national scheme of carrier liability for loss or damages to goods transported in interstate commerce." *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015). Carriers are restricted in their ability to limit their liability for cargo damage, and are fully liable for damage to the cargo unless the shipper has agreed to some limitation in writing. *Id.* Shippers are relieved of the burden of determining which carrier caused the loss as well as the burden of proving negligence, but carriers in turn acquire reasonable certainty in predicting potential liability because shippers' state and common law claims against a carrier for loss to or damage are preempted. *Id.*

The Amendment is "comprehensive enough to embrace responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation." *Tran Enterprises, LLC v. DHL Exp. (USA), Inc.*, 627 F.3d 1004, 1008 (5th Cir. 2010) (quoting *Georgia, F. & A. Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 196 (1916)). So, it "bars a shipper from seeking any other remedy either state statutory or common law provides *against a carrier* for damages to the shipper's goods that have been transferred in interstate commerce." *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 288-89 (7th Cir. 1997) (emphasis supplied); *see Essex Ins. Co.*, 885 F.3d at 1300; *A.T. Clayton & Co. v. Missouri-Kansas-Texas R. Co.*, 901 F.2d 833, 834 (10th Cir. 1990).

> For over one hundred years, the Supreme Court has consistently held that the Carmack Amendment has completely occupied the field of interstate shipping. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it. The Court has consistently described the Amendment's preemptive force as exceedingly broad—broad enough to embrace all losses resulting from any

failure to discharge a carrier's duty as to any part of the agreed transportation. State laws are preempted regardless of whether they contradict or supplement Carmack relief.

*Certain Underwriters at Interest at Lloyds of London v. United Parcel Serv. of Am., Inc.*, 762 F.3d 332, 336 (3d Cir. 2014) (citations and quotations omitted).

In sum, the Carmack Amendment "preempts all state or common law remedies *available to a shipper against a carrier* for loss or damage to interstate shipments." *Id.* (emphasis supplied) (citing *N. Am. Van Lines*, 89 F.3d at 456); *accord Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1061 (9th Cir. 2011); *Ward v. Allied Van Lines, Inc.*, 231 F.3d 135, 138 (4th Cir. 2000); *see Fulton*, 481 F.2d at 331. But

> [t]he limitations of Carmack preemption illustrate that the federal interest in establishing a uniform liability policy does not extend beyond ensuring a carrier's predictable maximum liability. . . . [S]tates may maintain laws that do not 'in anywise either enlarge or limit the responsibility of the carrier for the loss of property intrusted to it in transportation, and only incidentally affect[] the remedy for enforcing that responsibility.'"

*Mason & Dixon*, 632 F.3d at 1061-62 (quoting *Missouri, K. & T. Ry. Co. of Tex. v. Harris*, 234 U.S. 412, 420 (1914)). As the *Mason & Dixon* court explained,

> [e]xcluding from the scope of Carmack preemption a generally applicable statute designed to encourage settlement that only incidentally affects a shipper's recovery from a carrier is in keeping with the purpose . . . . that carriers be able to base rates upon value

and that a carrier's compensation should bear a reasonable relation to the risk and responsibility assumed. When a carrier receives goods for interstate transportation, the carrier can assess the value of those goods, predict its liability with certainty based on actual loss, and set a rate based on the risk and responsibility assumed. The only information required to set that rate are the value of the goods and the carrier's maximum liability for carrying them. To the extent that the additional burden of a generally applicable state law does not appreciably affect a shipper's grounds for or measure of recovery against a carrier, it cannot affect a carrier's calculus in setting rates, and therefore cannot conflict with Carmack's purpose.

632 F.3d at 1062. In other words, in assessing whether a state statute is preempted by the Carmack Amendment, "the focus is on whether the state statute substantively enlarges the carrier's responsibility for the loss." *A.T. Clayton,* 901 F.2d at 835. State settlement laws conflict with the Carmack Amendment only to the extent that those laws enlarge or limit the responsibility of the carrier for damages to the shipper. *Mason & Dixon,* 632 F.3d at 1062.

Accordingly, in *Mason & Dixon,* the Ninth Circuit held that California's statutes regarding partial settlement of cases were not preempted by the Carmack Amendment. *Id.* at 1063. The California statutes, the Court of Appeals reasoned, "are generally applicable, do not affect a shipper's ground of recovery, or the measure of recovery against a carrier, and are important to California's strong public policy to encourage the voluntary settlement of litigation." *Id.* at 1062 (quotations omitted). And, the Court explained,

The Carmack Amendment does not show a preference for any particular approach to partial settlement because no regime conflicts with the statute's goal of ensuring that carriers can assess their risks and predict their potential liability for damages. A carrier's net liability for damages after recovery from third parties based on their relative culpability does not depend on the legal mechanism by which a carrier may recover, but rather the extent of the third party's culpability and that party's preference for settlement. Under any settlement regime, these variables are unpredictable, and therefore cannot affect a carrier's ability to set rates. Consequently, the application of diverse state settlement laws in Carmack Amendment cases does not threaten the federal interest in a uniform national scheme that allows carriers to set their rates based on predictable liability for damages to goods in interstate carriage.

*Id.* at 1063. Federal law, therefore, did not preempt state law. *Id.*[10]

The same principles apply here: nothing in § 25-21,185.11 affects a shipper's right to recover from a carrier, or increases a carrier's potential liability, where the carrier and shipper are the settling parties. Of course, a different situation would be presented if a shipper settled with a third party, and a Carmack defendant sought to reduce its liability. So too would the situation be different if a Carmack defendant sought to reduce its liability pursuant to Neb. Rev. Stat. § 25-21,185.09. But this is not such a case.

---

[10] The Court has reviewed Certain Underwriters' strenuous efforts to distinguish or disagree with *Mason & Dixon*, filing 201 at 142-44, and is not persuaded.

Certain Underwriters nonetheless insists that it is "clear" under federal law "that no apportionment of fault with the settling party is required **where that defendant's liability is limited under a federal statute and the remaining defendants are subject to state common law**. Rather, the federal settling party's payment is merely deducted as an offset *pro tanto*." Filing 317 at 4 (emphasis in original) (citing *Schadel v. Iowa Interstate R.R.*, 381 F.3d 671, 678 (7th Cir. 2004)). But the authority relied upon by Certain Underwriters quite plainly does not support that proposition: in *Schadel*, the plaintiff settled his state law claim with the third-party tortfeasor, and the issue presented to the Seventh Circuit was how that settlement affected the plaintiff's subsequent jury trial and award of damages on his federal claim (specifically, a FELA claim). 381 F.3d at 674. The Seventh Circuit, quite unremarkably, applied federal law in determining that a *pro tanto* reduction of the plaintiff's *federal* damages award was appropriate. *Id.* at 677-78. *Schadel* does not speak to how a state law award should be treated— particularly after the federal claims have been dismissed—and certainly does not support the construction placed upon it by Certain Underwriters.[11]

Nor does Certain Underwriters' discussion of *Edmonds v. Compagnie Générale Transatlantique*, 443 U.S. 256 (1979), provide any help. In *Edmonds*, the Supreme Court weighed the effect on joint and several liability of the Longshoremen's and Harbor Workers' Compensation Act, and permitted the

---

[11] In point of fact, Certain Underwriters clearly represents *Schadel* as holding that federal law "impose[d] joint and several liability on state law tortfeasor for fault of co-defendant who settled under federal statute, in that case FELA, after deducting settlement *pro tanto*." Filing 317 at 4. That simply misrepresents the facts of the case—although, to be fair, Certain Underwriters *did* accurately summarize the case in its briefing on summary judgment. *See* filing 201 at 134-35.

injured plaintiff to recover the entirety of his damages from a negligent shipowner without allocating fault to a stevedore whose liability was limited by the Act. *Id.* at 266. But as the Supreme Court itself has explained, "*Edmonds* was primarily a statutory construction case and related to special interpretive questions posed by the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act." *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220 (1994). "Moreover, *Edmonds* did not address . . . the effect of a settlement on nonsettling defendants. Indeed, there was no settlement in that case. Instead, one can read that opinion as merely reaffirming the well-established principle of joint and several liability." *Id.* And

> there is no tension between joint and several liability and a proportionate share approach to settlements. Joint and several liability applies when there has been a judgment against multiple defendants. It can result in one defendant's paying more than its apportioned share of liability when the plaintiff's recovery from other defendants is limited by factors beyond the plaintiff's control, such as a defendant's insolvency. When the limitations on the plaintiff's recovery arise from outside forces, joint and several liability makes the other defendants, rather than an innocent plaintiff, responsible for the shortfall.

*Id.* at 220-21 (footnote omitted). But when there has been a settlement,

> the plaintiff's recovery against the settling defendant has been limited not by outside forces, but by its own agreement to settle. There is no reason to allocate any shortfall to the other defendants, who were not parties to the settlement. Just as the other

> defendants are not entitled to a reduction in liability when the plaintiff negotiates a generous settlement, so they are not required to shoulder disproportionate liability when the plaintiff negotiates a meager one.

*Id.* at 221 (citation omitted).

Certain Underwriters directs the Court to no language in the Carmack Amendment comparable to the text at issue in *Edmonds*. And while *McDermott* is not on point here either—all of the plaintiff's claims in that case sounded in admiralty—it does clearly stand for the proposition that there is in principle no conflict between holding defendants jointly and severally liable but apportioning fault when a claim is settled. That provides further support for the conclusion that, in the absence of any reduction in the carrier's liability under the Carmack Amendment, apportioning fault after a plaintiff's Carmack claims have settled doesn't inherently conflict with the remedial provisions of that statute.

In sum, federal law doesn't preclude applying Nebraska's comparative negligence statutes—specifically, § 25-21,185.11—where their application does not affect the shipper's right to recover from a carrier under the Carmack Amendment or increase the carrier's potential liability beyond that permitted under the Carmack Amendment. And it doesn't here. If Certain Underwriters is unable to fully recover the amount of its subrogor's loss, that's not because state law limited its remedy under the Carmack Amendment—it's because Certain Underwriters chose to settle its Carmack claims, which the Carmack Amendment permits, and because the shipper and carrier agreed to limit the carrier's liability, which the Carmack Amendment also permits. *See Rocky Ford Moving Vans*, 501 F.2d at 1372.

## II. MOTION FOR SUMMARY JUDGMENT

Southern Pride and Thunder Rolls have also moved for summary judgment (filing 241), raising largely the same issues as the motion to reconsider. More specifically, Southern Pride and Thunder Rolls assert that because § 25-21,185.11 applies, nearly all of Road Star's cross-claims ought to be dismissed.[12] Filing 241 at 15. Road Star doesn't disagree.[13] *See* filing 244. And of course, they're right, for the reasons discussed above. So, the Court will grant their motion for summary judgment (filing 241), and Road Star's indemnity and contribution cross-claims against Southern Pride and Thunder Rolls will be dismissed.[14]

## III. DISCOVERY AND PROGRESSION MOTIONS

After the motion for reconsideration and motion for partial summary judgment were filed, the parties became embroiled in significant disputes

---

[12] Road Star has also pursued a cross-claim for property damage allegedly caused by Southern Pride and Thunder Rolls. *See* filing 176 at 11-13. The validity of that claim is not at issue, and accordingly, it may proceed. *See* filing 241 at 4.

[13] Certain Underwriters does disagree. Filing 243. For the reasons explained above, its arguments aren't persuasive. But the Court does reject Southern Pride's and Thunder Rolls' contention that Certain Underwriters lacks standing to oppose the motion for summary judgment. *See* filing 251 at 3. Given the reasoning of the motion—that is, that Road Star and Bauer Built are entitled to allocate fault to Southern Pride and Thunder Rolls—Certain Underwriters' interests are obviously implicated, and it has a right to weigh in.

[14] Having reached that conclusion, the Court need not, and does not, consider whether Southern Pride and Thunder Rolls would have been liable for contribution at common law, *see Estate of Powell ex rel. Powell v. Montange*, 765 N.W.2d 496, 504 (Neb. 2009) (citing *Woods v. Withrow*, 413 So. 2d 1179 (Fla. 1982)), or whether such claims would have been preempted by the Carmack Amendment.

regarding discovery and progression, and those disputes have resulted in a number of ancillary motions, some less necessary than others. The Court had hoped that counsel's recent resolution of some of those motions, *see* filing 303, was an encouraging sign that the lawyers had resumed respectful cooperation. Alas, it wasn't so.

As a general matter, the Court is disappointed by the state of things. There is some reason to believe that counsel have become more invested in settling their personal beefs—and having the Court validate them—than in resolving the underlying dispute, either by consensus or at trial. Having driven one another mad, counsel are apparently determined that the Court should join them by reviewing months' worth of their correspondence and discovery materials in order to assess who's at fault. But deciding which side is more to blame for this situation presents an apportionment problem that may well be more difficult than the one found in the merits of the case. For now, the Court still holds counsel, at least, jointly and severally liable.[15] And although the parties may disagree, the Court is doing them a favor by resetting the board so they can try to do better.

But with that said, the Court needs to directly address the pending motions. Several are directly discovery-related. *See* filing 258; filing 261; filing

---

[15] The Court does, however, take particular note of Certain Underwriters' counsel's persistent effort to disparage Road Star's counsel with the claim that the Wilson Elser law firm has been "sanctioned repeatedly in previous cases[.]" *E.g.* filing 277 at 21. "Repeatedly" seems to mean "three times in the last 22 years," which—for a law firm with nearly 800 attorneys and 35 offices—doesn't seem particularly damning. That doesn't even meet Fed. R. Evid. 404(b)(2) standards. But what does trouble the Court is the injection of personal invective into the case, of which this is a perfect example. Lawyers don't have to like one another, but they will conduct themselves professionally. *Cf. Holste v. Burlington N. R. Co.*, 592 N.W.2d 894, 912 (Neb. 1999). And *ad hominem* attacks are neither persuasive, in this Court, nor professional.

264; filing 311; filing 315. But, as has been the situation before in this case, the landscape has changed since the motions were filed. The parties have, no doubt, framed their discovery requests—and their opposition to opposing counsels' discovery requests—on the framework set forth in the Court's January 30, 2018 Memorandum and Order (filing 217). Some of the discovery issues presented might be moot—and other new issues might be presented—as a result of the Court's revisitation of that order. In particular, Southern Pride's and Thunder Rolls' potential liability has been reduced, changing their relationship with the remaining parties.

The Court also has no inclination to referee the parties' squabbling about Certain Underwriters' requests for admission. Road Star and Bauer Built sought to be excused from answering them at all, contending that they're overly burdensome. Filing 258; filing 261. And there's at least a little truth to that: it's not clear, for instance, why Bauer Built should be required to essentially sign off on the accuracy of deposition transcripts. *See* filing 313-1. But it's not insensible, either: an Fed. R. Civ. P. 36 admission has a conclusive effect that the testimony of a witness—even a Fed. R. Civ. P. 30(b)(6) witness—does not. *Compare* Praetorian Ins. Co. v. Site Inspection, LLC, 604 F.3d 509, 514 (8th Cir. 2010), *with* S. Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control, 731 F.3d 799, 811 (8th Cir. 2013). Many of the requests to which objections were posed appear to the Court to be anodyne, and easily admitted or denied. *See generally* filing 313-1. Nor are over-inclusive boilerplate objections particularly helpful to a court that's been asked to assess the propriety of the requests. On the other hand, there's a fair case to be made that some of the requests sought admissions that Certain Underwriters should have known to be contested or unknown—suggesting there may have been disregard for the burden imposed on opposing counsel.

Having looked over the requests for admissions, responses, and arguments about them, the Court's answer for now is this: a plague on both your houses.[16] As explained elsewhere, the Court is resetting the progression schedule, so the parties will have another chance to be reasonable. Beyond that, "[t]he court may defer its final decision [regarding the sufficiency of an answer or objection] until a pretrial conference or a specified time before trial." Rule 36(a)(6). The parties should not expect the Court to sort out their disagreements before then—and, in the meantime, they can consider the potential pitfalls of their current course. None of them should feel particularly confident that the Court would eventually endorse their position.

The Court will, therefore, deny the motions for protective order (filing 258 and filing 261), motion to compel (filing 264), and motion to determine the sufficiency of answers and objections to requests for admission (filing 311) without prejudice, to give the parties an opportunity to reevaluate their position in light of current circumstances. (This is also an opportunity for the parties to make one more effort to professionally resolve their disagreements before reasserting them to the Court. The Court recommends that counsel make the most of that opportunity.)[17]

Road Star and Bauer Built also seek to extend the progression schedule, *see* filing 256, and Certain Underwriters does not oppose some extension, *see* filing 266. They do not agree on the proposed schedule. *See* filing 266. But they

---

[16] *See* William Shakespeare, The Tragedy of Romeo and Juliet act 3, sc. 1.

[17] The Court also notes Certain Underwriters' objection (filing 315) to Road Star's "supplement" (filing 314) to its motion to compel (filing 264). It's not entirely clear to the Court what the purpose of Road Star's filing was. But it's wholly unclear why Certain Underwriters felt the need to intervene and demand a ruling on a discovery dispute *to which it's not a party*. The Court will refuse that demand.

are also not that far apart on most points. *Compare* filing 256 at 19, *with* filing 266 at 4. Surely, counsel can find a reasonable compromise. And this, too, is a matter on which the parties may now wish to revise their positions. The Court accepts its fair share of the responsibility for where these proceedings are at—but, they are where they are, and the Court suggests that the parties set aside the question of who's responsible for it and make a concerted effort to agree on what needs to be done, and how quickly it can be achieved. The Court will set aside the progression schedule and direct the parties to confer, make *every effort* to reach consensus, and set a conference with the Magistrate Judge for purposes of setting a new progression schedule.

Certain Underwriters has also asked the Court to compel another mediation. Filing 269. Perhaps another mediation session would be productive, particularly now that the parties are better able to assess the risk of going to trial—but the Court will not compel mediation on the present motion, which does not indicate an expressed willingness, on everyone's part, to discuss settlement. The parties should confer on this matter as well, and the Court will entrust the Magistrate Judge with determining, after discussing the matter with the parties, whether an additional session of mediation should be held.

Next, Bauer Built has filed a motion (filing 319) for a "declaration" regarding the status of its cross-claims: specifically, Bauer Built asks the Court to "declare that its cross-claims against Cross-Defendants Southern Pride and Thunder Rolls remain pending, or in the alternative, grant Bauer Built leave to re-file its cross-claims against Southern Pride and Thunder Rolls as previously set forth in Bauer Built's Answer to the original Complaint." Filing 319 at 8. That's a peculiar request, because the Court has previously explained at length (and with significant consequences for everyone involved) that "once an amended pleading is interposed, the original pleading no longer performs

27

any function in the case." Filing 159 at 4 (quotation omitted) (citing Charles A. Wright & Arthur Miller, 6 Federal Practice & Procedure § 1476 (3d ed. 2017)). And Bauer Built's operative pleading (filing 178) contains no cross-claims.

So, the Court cannot declare that Bauer Built's cross-claims remain pending, because they don't. And the Court will not give leave to file an amended answer at this point, for two reasons: (1) Bauer Built may or may not still want to assert a cross-claim, in light of this memorandum and order, and (2) Bauer Built's "motion for declaration" does not comply with the requirements of Fed. R. Civ. P. 15(a)(2) and, particularly, NECivR 15.1. If Bauer Built still wants a cross-claim, it should file an appropriate motion showing good cause for leave to amend. *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 717-18 (8th Cir. 2008).[18]

Finally, Certain Underwriters has asked for leave to file a summary judgment motion as to damages. Filing 325. The Court will deny that request without prejudice, because it too is a subject best addressed in association with the larger questions of case progression that the Court is directing the parties to discuss with one another.


IT IS ORDERED:

1. Bauer Built and Road Star's motion for reconsideration (filing 232) is granted in part and denied in part.

---

[18] The Court notes that because amending a pleading out of time implicates the progression schedule, *see id.*, it might be an appropriate subject to bring up in the context of a broader discussion about case progression.

2. Thunder Rolls and Southern Pride's motion for partial summary judgment (filing 241) is granted.

3. Road Star's cross-claims for indemnity and contribution against Southern Pride and Thunder Rolls are dismissed.

4. Bauer Built and Road Star's motion to extend the progression order (filing 256) is granted in part.

5. The deadlines contained in the operative progression order (filing 222) are set aside, the pretrial conference and trial date are continued, and the parties are directed to confer on an amended progression schedule acceptable to all parties.

6. On or before July 13, 2018, the parties shall contact the Magistrate Judge to set a case progression conference, which shall also address whether further mediation would be productive.

7. The motions for protective order filed by Road Star (filing 258) and Bauer Built (filing 261) are denied without prejudice.

8. Road Star's motion to compel (filing 264) is denied without prejudice.

9. Certain Underwriters' motion to compel mediation (filing 269) is denied.

10.   Certain Underwriters' motion for telephonic oral argument (filing 286) is denied.

11.   Certain Underwriters' motion to determine the sufficiency of Bauer Built's answers and objections to requests for admission (filing 311) is denied without prejudice.

12.   Certain Underwriters' objection (filing 315) is overruled.

13.   Bauer Built's motion for declaration (filing 319) is denied without prejudice.

14.   Certain Underwriters' motion for leave to file a summary judgment motion on damages (filing 325) is denied without prejudice.

Dated this 28th day of June, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge